UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | |
|---|---|
| PRIME AID PHARMACY CORP., | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : |
| | : |
| HUMANA INC., | : |
| | : |
| Defendant | : |

## PLAINTIFF PRIME AID PHARMACY CORP.'S COMPLAINT AGAINST DEFENDANT HUMANA INC.

## TABLE OF CONTENTS

**Page**

I.      BACKGROUND ...................................................................................................1

II.     HUMANA EMPLOYS PRETEXT TO PRECLUDE PRIME AID FROM ITS
        NETWORK ..........................................................................................................6

III.    ANY WILLING PROVIDER ...............................................................................6

IV.     JURISDICTION AND VENUE............................................................................7

V.      PARTIES ..............................................................................................................8

VI.     FACTUAL BACKGROUND ...............................................................................9

        A.      Pharmacy Benefit Managers and Humana.................................................9

        B.      Specialty Pharmacies and Prime Aid ..................................................... 10

                1.      Specialty Pharmaceuticals ...........................................................10

                2.      Specialty Pharmacies ...................................................................11

                3.      Prime Aid ......................................................................................12

        C.      Humana's Improper Termination of Prime Aid..................................... 13

        D.      Prime Aid's Application to Join Humana's Network and Humana's Sham
                Excuses to Refuse Access ...................................................................... 16

        E.      Humana's Arbitrary Five Year Exclusionary Period............................ 17

VII.    HUMANA'S REJECTION OF PRIME AID'S APPLICATION VIOLATES NEW
        JERSEY'S ANY WILLING PROVIDER LAWS ...............................................17

VIII.   ANTITRUST ALLEGATIONS ..........................................................................18

        A.      Relevant Market:  Humana Network Market for Specialty Pharmacy
                Services ................................................................................................. 20

        B.      Market Power........................................................................................ 21

        C.      Anticompetitive Conduct ...................................................................... 22

i

D.      Harm to Competition and Antitrust Injury.............................................................. 25

FIRST CAUSE OF ACTION:  DECLARATORY RELIEF ..........................................................26

SECOND CAUSE OF ACTION: INJUNCTIVE RELIEF ...........................................................27

THIRD CAUSE OF ACTION: VIOLATION OF SECTION 2 OF THE SHERMAN
        ACT ..................................................................................................................................28

FOURTH CAUSE OF ACTION: VIOLATION OF SECTION 1 OF THE SHERMAN
        ACT ..................................................................................................................................29

FIFTH CAUSE OF ACTION: VIOLATION OF NEW JERSEY ANTITRUST ACT ...............31

JURY DEMAND ...........................................................................................................................33

## I.      <u>BACKGROUND</u>

1.      This case is brought by Plaintiff Prime Aid Pharmacy Corp. ("Prime Aid"), a specialty pharmacy located in Union City, New Jersey, harmed by the illegal conduct of Pharmacy Benefit Manager ("PBM"), Defendant Humana Inc.  ("Humana").[1]   Humana is about to become one of the largest pharmacy operations in the United States.  In July 2015, Humana entered into an agreement to be acquired by Aetna Inc. ("Aetna").  In addition to operating a PBM, Humana also operates its own mail order pharmacy.  Like Prime Aid, however, Humana fills prescriptions for specialty drugs.  Unlike Prime Aid, Humana has no physical presence in New Jersey and fills all New Jersey prescriptions by mail order.

2.      The need for an in-state specialty pharmacy is especially acute because Prime Aid presently services over 5,000 specialty patients who reside in New Jersey.  Many of these very ill patients speak English only as a second language.  The appropriate dispensing of medication for these drugs requires monitoring for compliance.  In some cases, interruptions in treatment may have severe medical consequences.  The limitations of mail order dispensing are not best suited to the needs of these patients.

3.      In violation of New Jersey's Any Willing Provider law and the antitrust laws of both the United States and New Jersey, Humana has acted with anticompetitive intent and with total disregard for the health and welfare of its patients in New Jersey.  It has ousted Prime Aid from its provider network, absent the required due process.

---

[1]      A PBM or Pharmacy Benefit Manager is an agent of an insurance carrier, plan sponsor or employer, with responsibility for managing prescription drug programs including the processing and payment of prescription drug claims made by patients or their pharmacies.

4.      Humana has sought to exclude Prime Aid from its Network knowing that Prime Aid extends services to New Jersey residents that cannot be provided by mail order.  Prime Aid has demonstrated that it is able to fully comply with conditions in Humana's Network.

5.      Humana's exclusion of Prime Aid from its Network is motivated by its desire to drive Prime Aid's patients to its own specialty pharmacy and with the specific intent to exploit its control over PBM services for its New Jersey patients.  It is an attempt to monopolize the market for specialty pharmacy services to New Jersey residents locked into their use of Humana's PBM services.

6.      If not stopped, Humana's wrongful conduct will likely monopolize its captive market for specialty medications.  It is not just Prime Aid, but healthy competition and the welfare of severely compromised patients that are being harmed by Humana's anticompetitive scheme.

7.      Humana has abused the exclusive dealing arrangements it has with health plans and employers doing business in New Jersey by excluding Prime Aid from access to New Jersey patients requiring specialty pharmacy services.

8.      With its market power as one of the largest PBMs in the United States enhanced as a result of its acquisition by Aetna, Humana has mounted a campaign to eliminate competition from independent specialty pharmacies in the market for patients locked into its PBM.

9.      Humana's anticompetitive behavior is not limited to Prime Aid in New Jersey. On information and belief, Humana is deploying a similar strategy to monopolize specialty pharmacy services in its Network at the expense of patients who are locked into that Network as well as other independent specialty pharmacies like Prime Aid.

10.     Humana's exclusionary conduct is not unique to Prime Aid.  As attorney David A. Balto testified before the Regulatory Reform, Commercial and Antitrust Law Subcommittee of the House Judiciary Committee on November 17, 2015:

> PBMs increasingly engage in anticompetitive, deceptive or egregious conduct that harms consumers, health plans, and pharmacies alike.  In a nutshell, both consumers and pharmacies suffer as consumers are increasingly denied a choice in their level of pharmacy service by PBMs.  PBMs exercise their power to restrict consumers to the PBM's own captive mail order and specialty pharmacy operations, reducing choice and quality for many.
>
> . . .
>
> This is especially true for specialty pharmacies.  Specialty pharmacies manage the highly-expensive and very complex treatments for the most intricate and serious illnesses.  The service they provide is both distinct and significant from other retail pharmacies.   Beyond merely dispensing drugs, specialty pharmacies help administer complex treatments, assist physicians in monitoring patient therapy, and play an important role in medication compliance and improved health outcomes.  Specialty pharmacies educate patients on effective utilization, monitor side effects, and partner with physicians to identify ineffective medications and recommend treatment changes.   Specialty pharmacies play an active role in providing continuity of patient care to ensure that costs are minimized and health outcomes improve.   And there is clear evidence that patients needing specialty medications have better health outcomes when they have the services of a community pharmacy rather than being forced into a PBM-owned mail order operation.
>
> . . .
>
> More recently, PBMs are finding new revenue sources through egregious conduct.  Some PBMs are using audits not just as a means of supposedly combating fraud but rather as a mechanism to secure greater revenue.  PBMs engage in a variety of audit tactics such as "extrapolating" errors to inflate recoveries.  Some PBMs rely on unfair and technical errors to withhold substantial funds from providers despite evidence that patients properly received dispensed medications.

3

11.     Prime Aid has operated a specialty pharmacy in New Jersey since 2006.  It boasts a well-deserved reputation for providing extraordinary service.  As a result, it has secured the confidence and trust of prescribing physicians and clinics, as well as the underserved and critically ill patients who require the guidance and support it provides.

12.     Prime Aid started as a store front pharmacy striving to provide superior service to a limited number of patients.  It has since developed into a substantial competitor for the specialty pharmacy services offered through PBM-affiliated mail order pharmacies.  Depending on a group of in-house pharmacists and nurses, it meets the demands of the physicians and patients it serves in both the administration of the drugs and monitoring symptoms and compliance.

13.     Taking note of Prime Aid's growth in patient accounts, Humana has now engaged in wrongful conduct to use its market power as a PBM to extinguish Prime Aid as a competitor in order to build and establish market power of its own as a specialty pharmacy provider.

14.     In filling tens of thousands of specialty drug prescriptions, Prime Aid has distinguished itself in New Jersey.  Its nurses regularly visit patient homes to assist patients in the initiation of treatment.  Prime Aid's staff  is multilingual, providing assistance to patients in Spanish, Russian, Vietnamese and Chinese dialects and other languages in order to make certain that patients understand the details of administration of the medications as well as the monitoring of symptoms.

15.     Through its superior service, Prime Aid has established working and referral relationships with many of the premier hospitals and medical practices in New Jersey.  These relationships are now jeopardized by Humana's exclusion.  Employing pretextual reasons for

4

denial, Humana refuses to allow a substantial and increasing percentage of its patients who are locked into its provider network from using the services of Prime Aid.

16.     It is only now that Prime Aid has grown its business, and Aetna has agreed to acquire Humana and its specialty pharmacy with a capability of supplying via mail order specialty drugs, that Prime Aid's ability to provide personalized services to physicians and patients has become an impediment to Humana's drive to monopolization of its Network.

17.     Mergers, acquisitions and consolidation among PBMs have concentrated a substantial market power in the hands of a limited number of PBMs.  The abuse of that market power has become acute in markets for specialty pharmacy services.

18.     In flagrant violation of New Jersey's Any Willing Provider laws, Humana has ignored the needs of prescribing physicians and the requirements of patients in order to drive the lucrative specialty pharmacy business to its captive mail order specialty pharmacy.  This conduct adversely affects the level of service and quality of care available to patients in great need, and does so at the risk of tragic consequences.

19.     Patients requiring specialty pharmacy services are locked into specialty pharmacy services in network, because the costs of going out-of-network are prohibitive for these expensive medications.  For example, a prescription for Hepatitis C medications, Harvoni and Sovaldi, may cost as much as $29,000 a month over a number of consecutive months.

20.     Specialty drugs are not just particularly expensive.  They require attention in their storage and shipment.

21.     Specialty patients often require personal assistance in self-injection and therapeutic compliance, at a level unavailable by mail order.

22.     Efforts by several PBMs to force HIV patients to use captive mail order pharmacies have recently been challenged in the courts and abandoned by the PBMs.  In New Jersey, the Any Willing Provider law prohibits such conduct, including the conduct by Humana.

## II.     HUMANA EMPLOYS PRETEXT TO PRECLUDE PRIME AID FROM ITS NETWORK

23.     In 2014, Prime Aid was improperly terminated from Humana's Network.  In April 2015, Prime Aid submitted an application to join Humana's Network.  On May 7, 2015, Humana notified Prime Aid that Prime Aid's application was denied.  In its denial of Humana's application and its refusal to reconsider its denial, Humana refused to acknowledge the fact that Prime Aid was willing and able to meet the terms and conditions Humana has set forth for its providers.  Instead, Humana relied on a policy that a pharmacy terminated for cause could not reapply to join Humana's Network until five (5) years have passed after the termination.  In its denial, Humana failed to comply with New Jersey's Any Willing Provider law.  It failed to provide an adequate statement of denial, instead alleging general violations, and in violation of New Jersey's Any Willing Provider law, required that five (5) years pass before Prime Aid may apply to re-join Humana's Network.

24.     At all times, Prime Aid has been and remains ready, willing and able to meet the terms and conditions for participation in the Humana Network.

## III.     ANY WILLING PROVIDER

25.     New Jersey's Any Willing Provider law requires that health plans and PBMs admit any provider, including a specialty pharmacy such as Prime Aid, into their networks, if the provider is willing to meet the terms and conditions the insurer or PBM requires of its network providers.

6

26.     As addressed below, Humana's summary denial fails to set forth the factors upon which the decision was based as required by the Any Willing Provider law.  The summary denial and its five (5) year waiting requirement are simply cover for Humana's anticompetitive goal to eliminate Prime Aid as a ready, willing and able competitor.

27.     Humana's effort to bar Prime Aid from its Network is designed to steer patients who would otherwise utilize Prime Aid for their medications and their administration to its other affiliated pharmacies and to its own specialty pharmacy, thereby enabling Humana to monopolize the market for patients requiring specialty medications who are locked into the Humana Network.

28.     Prime Aid seeks a declaratory judgment that Humana's denial of Prime Aid's application violates New Jersey's Any Willing Provider laws and an order that Humana is required to admit Prime Aid into its Network.  Prime Aid also seeks compensatory damages and treble damages, injunctive relief, costs and attorneys' fees for violations of the antitrust laws of the United States and New Jersey.

## IV.   <u>JURISDICTION AND VENUE</u>

29.     Plaintiff's claims against Humana include claims arising under the federal antitrust laws, including Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1337 because one or more claims arise under the laws of the United States and the antitrust laws, in particular, and pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

30.     This Court further has subject matter jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367, because those claims are related to the claims that arise under federal law and form part of the same case or controversy.

31.     This Court has personal jurisdiction over Humana as Humana conducts substantial business in New Jersey, which has a significant impact upon the residents of New Jersey.

32.     Venue is proper in this District under 28 U.S.C. §§ 15(a) and 22, and 28 U.S.C. § 1391, as a substantial part of the events giving rise to this action occurred in New Jersey and because Humana is subject to personal jurisdiction in New Jersey.

## V.     **PARTIES**

33.     Plaintiff Prime Aid Pharmacy Corp. is a New Jersey corporation with its principal place of business at 3915 Bergenline Avenue, Union City, New Jersey.  Prime Aid is the most prominent independent specialty pharmacy in New Jersey.  On information and belief, it is one of only a few specialty pharmacies that has a physical presence in the entire state.  It presently services thousands of patients with acute chronic conditions. It annually fills tens of thousands of medications for New Jersey residents.

34.     Prime Aid services patients with staff speaking at least seven different languages and has working relationships with most of the premier hospitals and healthcare providers in New Jersey.  Prime Aid is currently licensed in approximately forty (40) states (including New Jersey), although the vast majority of its business is local to New Jersey.  It is a New Jersey Medicaid provider and is certified by the two most widely recognized evaluators of health care delivery, URAC and JCAHO.

35.     Defendant Humana is a Delaware corporation with its principal place of business at 500 West Main Street, Louisville, Kentucky.  As a PBM, Humana processes and administers

8

the payment of health insurance claims submitted to insurers or self-insured employers by health care providers, such as specialty pharmacies like Prime Aid, for medical care that the provider has provided to an insured.  Aetna, one of the world's largest health insurance corporations, has agreed to acquire Humana, and the acquisition is anticipated to close in late-2016.

## VI.   FACTUAL BACKGROUND

### A.   Pharmacy Benefit Managers and Humana

36.   The pharmaceutical industry involves patients, physicians who write prescriptions, pharmacies that dispense medications, health insurance plans, drug manufacturers, and PBMs.

37.   PBMs are agents who manage an insurance company, health plan or self-insured employer's prescription drug program.  PBMs process and make payments on claims submitted to them for prescription medications which are then dispensed by a pharmacy to a patient.  PBMs also administer the pharmacy benefits for insurance companies, negotiate medication pricing with drug manufacturers and decide which medications and what form of the medication are covered under the various plans that an insurance company provides.

38.   Humana is among the largest PBMs in the United States and New Jersey, and the size and scope of its PBM is likely to be increased going forward, given the Humana's pending acquisition by Aetna.

39.   In addition to acting as a PBM, which involves processing and making payments on claims, Humana also operates its own pharmacy, including mail order and specialty pharmacy medications.  Humana already operates one of the largest specialty pharmacies in the United States.  After Humana's acquisition by Aetna closes, Humana's access to patients in the United States will only grow, and Humana's specialty pharmacy will control the specialty pharmacy

9

business within the Humana Network, much of that concentrated in providing captive services to patients who are locked into their use of the Humana's PBM through their group insurance plans.

40.     Every claim submitted by independent pharmacies to Humana for processing is a claim that Humana might otherwise process.  The revenues received by an independent specialty pharmacy might otherwise be received by Humana.  Specialty pharmacy revenues are particularly significant because of the high cost of specialty medications.  By excluding willing specialty pharmacies like Prime Aid from its Network, Humana is able to drive Prime Aid's specialty medication patients and the revenues their prescriptions generate to its own captive pharmacies.

### B.     Specialty Pharmacies and Prime Aid

#### 1.     Specialty Pharmaceuticals

41.     Medications designated as "specialty pharmaceuticals" require special treatment for a host of reasons.  Typically not available through retail pharmacies, these medications are used in the treatment of complex, chronic conditions, such as HIV, Hepatitis C, rheumatoid arthritis and organ transplants.  They are much more expensive than traditional pharmaceuticals and they require special handling and care in distribution and administration.  Patients require monitoring for compliance and education for proper treatment.

42.     Many specialty medications are derived from plasma-based proteins, which make them unstable.  They require extensive care in handling in order to ensure sterility, safety and stability.  They often need to be stored and shipped at a certain temperature and in special containers.

43.     Many specialty pharmaceuticals require injections or infusion.  Often patients are called upon to perform injections themselves.  Training is often required.  Improper

administration or monitoring of symptoms can lead to severe side effects and interfere with the efficacy of critical and expensive treatment regimens.

### 2. **Specialty Pharmacies**

44.     Specialty pharmacies dispense specialty pharmaceuticals.

45.     Some states, including New York, expressly require by law or regulation that the specialty pharmacies have a brick and mortar presence in the state so as to facilitate the demands of special care and attention required in dispensing these expensive medications for severe medical conditions.  Many of the specialty drugs spoil quickly.  Many require special regimens for administration, including injections that many patients have difficulty performing themselves. Because New Jersey does not expressly mandate brick and mortar presence for specialty pharmacies, almost no specialty pharmacies operate and provide personal services in the State.

46.     Specialty pharmaceuticals are expensive, thus raising a host of issues of payment, reimbursement and cash flow.  Even if a drug is covered under a health plan, co-payments and deductibles create significant issues for both the patient and the dispensing pharmacy.  Specialty pharmacies bear significant costs in closely managing an inventory which is particularly expensive and prone to spoiling, while providing needed services to patients in seeking waivers and manufacturer funding of co-pays and deductibles.

47.     Specialty pharmacies provide clinical support.  This support includes providing licensed pharmacists and nurses who assist patients with proper administration.  They answer questions that inevitably arise in the administration of specially pharmaceuticals.  Clinical support also includes patient education and counseling.

48.     Beyond education and counseling, specialty pharmacies engage the patient to monitor patient compliance with the treatment regimen, including timing, dosage and symptoms.

11

### 3.    Prime Aid

49.    On information and belief, there are less than five (5) specialty pharmacies located in New Jersey.  Of these, Prime Aid is the largest in terms of patients and prescriptions. It delivers specialty medications and supports doctors and patients across the entire state.

50.    Prime Aid provides extraordinary service in helping doctors and patients communicate and coordinate as needed to address the special needs for administration of these medications.

51.    Prime Aid's ability to track patient needs and compliance using its proprietary software programs and local presence was seen most recently when it made certain that drug deliveries were made ahead of the blizzard that struck the state the weekend of January 23-24, 2016.

52.    Local presence was also critical when Hurricane Sandy struck New Jersey.  When the hurricane disrupted communication, transportation and medical shipments in New Jersey, Prime Aid employees made deliveries on bicycle and other means and provided the support needed for proper administration of the specialty drugs.

53.    Physicians and clinics prefer to deal with Prime Aid over mail order specialty pharmacies due to the extraordinary demands in the delivery and administration of specialty drugs as well as Prime Aid's proven ability to provide effective specialty pharmacy services in New Jersey.

54.    On information and belief, Prime Aid is the only specialty pharmacy in New Jersey which maintains the resources to provide multilingual management of specialty patient needs.

55.     Prime Aid employs approximately fifty (50) New Jersey residents, including pharmacists and nurses whose livelihood depends upon employment with Prime Aid, which, in turn, depends upon revenue generated by filling medications for residents of New Jersey.

56.     Due to compromised health of its specialty patients, Prime Aid's physical presence in the state presents a great convenience in emergency situations.

### C.     Humana's Improper Termination of Prime Aid

57.     On April 4, 2014, Humana notified Prime Aid that it was terminating Prime Aid from its Network, alleging generally that Prime Aid violated Humana's terms and conditions by sending medications to patients in states in which Prime Aid was not licensed and by delivering medications to patients through mail delivery services.  Humana's notice to Prime Aid did not comply with New Jersey law, which required that specific details regarding the patients, medications, claims and dates involved, be provided.  A copy of Humana's April 4, 2014 letter is attached hereto as Exhibit "A".

58.     On April 17, 2014, Prime Aid responded to Humana and refuted its general allegations with detail.  A copy of Prime Aid's April 17, 2014 letter is attached hereto as Exhibit "B".

59.     On April 28, 2014, Humana provided additional details regarding the patients, medications, claims and dates in question. A copy of Humana's April 28, 2014 email is attached hereto as Exhibit "C".

60.     On May 12, 2014, Prime Aid responded in greater detail to Humana's allegations. A copy of Prime Aid's May 12, 2014 letter is attached hereto as Exhibit "D".

61.     On June 19, 2014, Humana responded to Prime Aid's explanation and refused to accept Prime Aid's explanation regarding the medications in question and also refused to honor

Prime Aid's request for a hearing, in violation of New Jersey law.  A copy of Humana's June 19, 2014 letter is attached hereto as Exhibit "E".

62.     On August 6, 2014, Prime Aid again requested that Humana provide it with a hearing, as mandated by New Jersey law, and again reiterated, as detailed below, that Prime Aid had sent medications via mail delivery to pre-existing Prime Aid patients in order to comply with applicable law.  Humana ignored both Prime Aid's request and explanations.  A copy of Prime Aid's August 6, 2014 letter is attached hereto as Exhibit "F".

63.     Contrary to Humana's assertion, Prime Aid's shipment of medications to Prime Aid patients in Florida and Ohio was in accordance with state laws and did not allow for termination from Humana's Network.

64.     Florida law states that "[a] patient has a right to treatment for any emergency medical condition that will deteriorate from failure to provide such treatment."  Fla. Stat. § 381.026.  Similarly, New Jersey defines "unprofessional conduct" as "gross negligence, gross malpractice, or gross incompetence which damaged or endangered the life, health, welfare, safety or property of any person." N.J.A.C. § 45:1-21(c).  Both states also permit pharmacies to dispense medications on an emergency basis for continuation of a therapy for chronic conditions or chronic maintenance drugs.  *See* N.J.A.C. § 3:39-7.4 and Fla. Stat. § 465.0275.  Ohio does not have laws prohibiting the out-of-state delivery of medications in which a patient is temporarily out-of-state and requires a short term refill to avoid the endangerment of their health due to the interruption in therapy.

65.     The patients to whom Prime Aid sent medication in Florida were existing Prime Aid patients suffering from chronic and serious conditions who travelled to Florida for short

periods of time.  Both patients requested that Prime Aid send their medications to them while they were in Florida.

66.     Prime Aid's dispensing of medication to those patients was in accordance with Florida and New Jersey law, and its failure to dispense the prescribed medications to those patients while the patients were in Florida would have constituted violations of Florida and/or New Jersey laws, including the aforementioned laws.

67.     The patients to whom Prime Aid sent medication in Ohio were also existing Prime Aid patients who were prescribed specialty medications and who suffered from chronic conditions.  The medications that were sent to the patients were specialty medications, and if the patients' treatment were interrupted, the consequences for the patient may have been catastrophic or fatal.

68.     Prime Aid's dispensing of medication to those patients in Ohio was in accordance with New Jersey and Ohio law, and its failure to dispense the prescribed medications to those patients while the patients were in Ohio would have constituted violations of New Jersey and/or Ohio law, including the aforementioned laws.

69.     Humana's own Agreement with its providers states that Humana shall comply "with all federal, state, local and CMS instructions, statutes, ordinances, orders, rules and regulations that are applicable to the provision of Pharmacy Services under terms and conditions to this Agreement." Agreement at § 2.5.

70.     In its April 4, 2014 letter, Humana also indicated that it was terminating Prime Aid because the Humana's Agreement with its providers excluded mail order pharmacies from the Agreement.

71.     Contrary to Humana's assertions, Prime Aid is not a mail order pharmacy. Prime Aid is not licensed as a mail order pharmacy in New Jersey, which has a separate licensure category for "mail order" pharmacies.

72.     Humana's termination of Prime Aid from its Network was without cause and simply an unlawful attempt to eliminate Prime Aid as competition in the State of New Jersey.

**D.      Prime Aid's Application to Join Humana's Network and Humana's Sham Excuses to Refuse Access**

73.     More than one (1) year after being terminated by Humana from its Network, Prime Aid, in April 2015,  submitted an application and all required supporting documentation to Humana necessary for re-admittance to the Humana Network.

74.     On May 7, 2015, Humana responded, denying Prime Aid's application.  A copy of Humana's response is attached hereto as Exhibit "G".

75.     In its response, Humana claimed that Prime Aid will not be "eligible to reapply for a Humana contract" until five (5) years passes from date the pharmacy was terminated.

76.     By letters dated May 14, 2015 and June 11, 2015, Prime Aid expressed its opposition to Humana's denial, identifying that Humana's five (5) year exclusionary period was far outside the industry standard of one (1) year and that the five (5) year exclusionary period violates the letter and spirit of New Jersey's Any Willing Provider statutes, N.J.S.A. §26:2J-4.7(a)(2). Prime Aid also reiterated that there was no appropriate legal or factual basis for Humana to have terminated it for cause in 2014.  A copy of Prime Aid's May 14, 2015 letter is attached hereto as Exhibit "H", and a copy of Prime Aid's June 11, 2015 letter is attached hereto as Exhibit "I".

77.     Humana responded on May 28, 2015, again claiming that Prime Aid had been terminated from Humana's Network for cause, that one of the "term[s] and condition[s]

applicable to pharmacies contracting with Humana" is that a pharmacy "terminated for cause may not be eligible for reapplication for a minimum of five years."  A copy of Humana's May 28, 2015 letter is attached hereto as Exhibit "J".

### E.   Humana's Arbitrary Five Year Exclusionary Period

78.   As Prime Aid cited in its correspondence with Humana, the industry standard for excluding a pharmacy from a PBM network after the PBM terminates the pharmacy for cause is one (1) year.

79.   Humana has provided no legal basis for a protracted exclusionary period of five (5) years.

80.   Humana's five (5) year exclusionary period violates the spirit and letter of New Jersey's Any Willing Provider law.

81.   By claiming that Humana's policy that a pharmacy terminated for cause from its Network must wait five (5) years before reapplying to its Network is a "term and condition applicable to pharmacies contracting with Humana," Humana is attempting to evade New Jersey's Any Willing Provider law.

### VII.   HUMANA'S REJECTION OF PRIME AID'S APPLICATION VIOLATES NEW JERSEY'S ANY WILLING PROVIDER LAWS

82.   As required by New Jersey's Any Willing Provider laws, any pharmacy which agrees to the terms and conditions set forth by any insurer, hospital service corporation, medical service corporation, health service corporation, or health maintenance organization shall not be denied the right to participate as a preferred provider or as a contract provider.  See N.J. P.L 1999, ch. 359, approved Jan. 18, 2000, N.J. Stat.§ 17:48-6j; 17:48A-7i; 17:48E-35.7; 17B:26-2.1i; 17B:27-46.1; 26:2J-4.7.   Under these same laws, no patient in New Jersey can be required

17

to obtain pharmacy services and prescription drugs from a mail service pharmacy.  E.g., N.J.
Stat. § 17:26-2.1i (a)(4)(a).

83.    Prime Aid has, at all relevant times, been ready, willing and able to meet the
terms and conditions that Humana applies to be a member of its Network.

84.    Prime Aid, in its appeal of Humana's decision to terminate Prime Aid and in its
application to join Humana's Network, has demonstrated that Humana's rejection of Prime Aid
is without any factual or legal basis.

85.    Prime Aid's provision of specialty medications to existing Prime Aid patients
who suffered from chronic and serious illnesses and who had traveled to other states was in
compliance with applicable laws, not in contravention of those laws.  Prime Aid's failure to
provide continuing care to those patients would have been in contravention of those laws and
would have likely had disastrous consequences.

86.    Prime Aid was not a mail order pharmacy and Humana cannot construe Prime
Aid's provision of specialty medications to Prime Aid's patients who are in desperate need of
specialty medications as Prime Aid being the equivalent of a mail order pharmacy.

87.    The language and directives of New Jersey's Any Willing Provider laws are clear;
Humana's actions violates those laws.

## VIII.  ANTITRUST ALLEGATIONS

88.    Humana has engaged in a sham exercise, denying due process and refusing to
allow Prime Aid, a willing provider, access to its Network on pretextual grounds.  Access to that
Network is essential to its ability to continue to compete in the relevant market with Humana
specialty pharmacy.  In the process, notwithstanding New Jersey's Any Willing Provider laws,
Humana is denying patients and doctors the provision of superior services which they have
repeatedly chosen over Humana's specialty pharmacy in the marketplace when allowed a choice.

89.     Humana has entered into agreements with health insurers and others through which it has obtained exclusive rights to determine what specialty pharmacies may provide services to the millions of patients who are locked into use of Humana's PBM services.  These agreements, as applied by Humana, illegally and unreasonably restrain trade, deprive patients and doctors of meaningful choices, superior service, and eliminate and foreclose competition from independent specialty pharmacies with the size and ability to meaningfully compete with specialty pharmacies affiliated with PBMs by offering superior services to patients and doctors.

90.     Patients who are insured in plans subjected to Humana's PBM Network are locked into using specialty pharmacies approved by Humana.  On information and belief, prior to its termination, Prime Aid was servicing a substantial percentage of the specialty drug prescriptions in the Humana Network for New Jersey residents, in competition with Humana's own specialty mail order pharmacies.  Humana has acted with a specific intent to monopolize this market and its continued conduct such as that deployed against Prime Aid has a reasonable probability of succeeding.

91.     Humana's wrongful conduct and agreements providing it with the power to exclude competition restrain trade and exclude Humana's most effective competition from major independent specialty pharmacies like Prime Aid.  They deny independent firms access to a locked-in patient specialty pharmacy market, harming competition and consumer welfare.

92.     The agreements, restraints and conduct relating to specialty pharmacy services and drugs and PBM services as alleged in this Complaint are in the regular, continuous and substantial flow of intrastate commerce within the State of New Jersey and interstate commerce in the United States.  They have a direct, substantial, and reasonably foreseeable effect and impact on such intrastate and interstate commerce.

19

A.     **Relevant Market:  Humana Network Market for Specialty Pharmacy Services**

93.     A relevant market in which Prime Aid competes with Humana, has competed with Humana, and/or would compete with Humana but for the unlawful exclusionary conduct of Humana, is the market for specialty pharmacy services to insureds in the Humana Network in New Jersey.

94.     Patients in health plans for which Humana serves as the PBM are locked into the use of only specialty pharmacies in the Humana Network to dispense specialty drugs and provide specialty pharmacy services.

95.     In recognition of the fact that patients are locked into their PBM networks and of importance to the patient's right to choose its pharmacy and the right of pharmacies independent of PBMs to continue to serve patients, many states, including New Jersey, have enacted Any Willing Provider Laws, which require PBMs to admit pharmacies to their networks.

96.     Although PBMs, such as Humana, have used various tactics to force specialty drugs into mail order delivery by their own pharmacies and away from independent pharmacies, many doctors and patients prefer the personal service and care provided by a local specialty pharmacy.  Health plans and plan sponsors also seek health care service providers that can provide services in the local geographic area in which plan participants reside and work. Pharmacies, including specialty pharmacies, are subject to regulation by state law, and those providing specialty pharmacy services in New Jersey must comply with the laws of New Jersey. The relevant geographic market for specialty pharmacy services is the State of New Jersey.

97.     Nowhere is the importance of access to PBM networks more important than with respect to specialty drugs.  Because of the severity of conditions treated by specialty drugs and the high expense of the drugs, patients requiring specialty drugs cannot simply choose to go out

20

of network and pay for the drugs themselves.  Further, hands-on, local services are particularly important to patients who need specialty pharmaceuticals.

98.     The agreements, restraints and conduct at issue have had a direct and substantial adverse effect on competition and consumer welfare, in the market for specialty pharmacy services to patients in New Jersey locked in to the Humana Network.  The result is a diminution in the level of service and quality of care in specialty pharmacy services.  Those services are substantially below that which would prevail in a competitive market in which physician and patient choices were given due consideration.

**B.     <u>Market Power</u>**

99.     Humana holds market power in the market for specialty pharmacy services for patients locked into the Humana Network in New Jersey.  It has the power to exclude competition and has exercised that power by sham termination and exclusion of successful specialty pharmacy providers like Prime Aid.  It has used its power to exclude competition to increase its market share and its market power by terminating and/or excluding successful specialty pharmacy providers from its network and driving patients to its captive or affiliated specialty pharmacies.

100.     On information and belief, Humana's captive pharmacies fill a substantial percentage of the specialty prescriptions for New Jersey residents locked into its network.  Absent its wrongful exclusion from the Humana Network, Prime Aid would be filling many of those same specialty prescriptions for New Jersey residents locked into the Humana Network.  Humana has driven, or is in the process of driving, those same patients to its own captive pharmacies.  Humana has the ability and intent to continue to increase its market share through further sham terminations, refusals to deal, refusal to observe the requirements of the New Jersey Any Willing Provider laws, and other wrongful practices.

101.    Humana has used its power to exclude competition to create significant barriers to successful entry or expansion in the market for specialty pharmacy services for patients locked into the Humana Network.  A regular practice in the industry which, on information and belief, Humana has employed, is to allow any out-of-network specialty pharmacy to fill the first order of a specialty drug, but then to require all future orders to be made through the PBM's specialty pharmacy, impeding entry into the market.  Once an independent pharmacy like Prime Aid garners a significant amount of specialty pharmacy business, it becomes a target for Humana. Humana uses its power to terminate participation and drive the pharmacy's business to its own captive specialty pharmacy, thereby increasing its market power.

102.    The power of Humana to exclude, coupled with powerful incentives to drive lucrative specialty pharmacy business in its network to its own captive specialty pharmacies, create significant barriers to meaningful entry, expansion and penetration in the relevant market for specialty pharmacy services to patients locked-in to the Humana network.  Specialty pharmacies, like Prime Aid, that have begun to have a positive impact on the market, are being smothered by wrongful terminations and exclusions, with PBMs like Humana disciplining independent specialty pharmacies and others who challenge their captive pharmacies by terminating them on sham grounds.

### C.    <u>Anticompetitive Conduct</u>

103.    Humana holds exclusive rights as a PBM to millions of patients who are members or subscribers to health plans which use Humana.  These patients did not and cannot choose their own PBM -- they are locked into the PBM chosen by their health plans.  Humana is abusing its power to exclude completion to eliminate its key Network competitor for lucrative specialty pharmacy services in this State.  It is forcing doctors and patients to forego their choice of Prime

Aid as their specialty pharmacy and accept Humana's inferior captive mail order special pharmacy.

104.    This force-placed inferior service has no place in a competitive market, much less in one in which the PBM effectively acts as the fiduciary of the patient in securing appropriate services from providers over which the patient is supposed to have had the ultimate choice.

105.    Access to the Humana Network is essential to a specialty pharmacy's ability to compete in the relevant market for specialty pharmacy services to locked-in New Jersey insureds.  Despite Prime Aid's years of superior performance in its network, Humana has acted without due process in excluding Prime Aid from participation in the Network based on false and pretextual reasons.

106.    Humana's exclusion of Prime Aid is not in good faith.  The exclusion does not relate to any legitimate performance problems or legitimate concerns in the service of patients or compliance with network requirements.

107.    Humana has acted arbitrarily and without due process in excluding Prime Aid solely to reduce competition for specialty pharmacy services while increasing Humana's profits, market share and market power in order to obtain a monopoly in the market for such services.

108.    Upon information and belief, Humana, which maintains control over much of the market for specialty pharmacy prescriptions, also intends to monopolize the market for specialty pharmacy services to New Jersey residents in its Network.   It does so with full knowledge that patients are locked into the Network, and unable to go elsewhere for expensive specialty drugs. By excluding its most effective competitor, Prime Aid, and deploying additional anticompetitive practices, Humana has a reasonable probability of succeeding in monopolizing its market.

109.    On information and belief, Humana has numerous contracts with health insurers, health plans or self-insured employers that provide it with exclusive rights to determine what specialty pharmacies will be allowed to provide specialty pharmacy services to the patients who are insured by or participate in those respective plans.  The agreements through which Humana obtains these exclusive rights are agreements in restraint of trade.  The cumulative effect of these agreements and Humana's exercise of its exclusive rights under these contracts is to foreclose Prime Aid from competition in the market for specialty pharmacy services to insureds in the Humana Network.

110.    Humana has acted arbitrarily and without due process in terminating Prime Aid from its Network in order to increase its market power and control a larger share of the highly profitable market for specialty pharmacy services to Network insureds.  Humana's exclusive dealing contracts, coupled with its wrongful conduct, foreclose meaningful competition in its Network.

111.    These exclusive dealing arrangements foreclose competition, harm competition and consumer welfare to harm Prime Aid, endangering the survival of its business, as well as its ability to serve the patients, clinics and doctors of New Jersey.

### D.     <u>Harm to Competition and Antitrust Injury</u>

112.    Prime Aid is a high quality local specialty pharmacy that offers superior services to patients and prescribing physicians in the New Jersey area.

113.    Competition for health care services occurs on several dimensions. Competition for level and quality of service is of particular importance in the dispensing of specialty drugs and the provision of specialty pharmacy services. Prime Aid, with its local presence, and its history and continuing ability to provide extraordinary services to meet the needs of patients receiving and doctors prescribing specialty drugs in the New Jersey area is a superior specialty pharmacy.

114.    To the extent Humana may grant collusive reciprocal access to specialty pharmacies controlled by other PBMs, those specialty pharmacies, unlike Prime Aid, do not effectively compete with respect to levels and quality of local services offered by Prime Aid and desired by consumers.

115.    Acting solely in the interest of its profits, Humana's illegal conduct has driven satisfied customers of Prime Aid into its captive mail order specialty pharmacy harming competition and the welfare of consumers.

116.    Prime Aid is by far, the largest of approximately five (5) independent specialty pharmacies in the state of New Jersey. Doctors and clinics around the state regularly rely on Prime Aid to meet the unique needs of those requiring specialty drugs.

117.    When Prime Aid was part of the Humana Network in calendar year 2013, it filled millions of dollars in specialty prescriptions comprising a material portion of the specialty prescriptions in that Network.

118.    In the market for specialty pharmacy services to insureds in the Humana Network, the exclusive agreements through which Humana has established its exclusive PBM network,

coupled with Humana's illegal exclusionary conduct, will foreclose Prime Aid entirely from the relevant market in which it competes with Humana.

119.    Prime Aid has been injured in its business and property by reason of Humana's anticompetitive conduct including its denial of patient and doctor choice of the quality local service of Prime Aid over lower quality mail order specialty pharmacy services forced on those patients and doctors by Humana's conduct and the anticompetitive restraints and flaunting of the policy of the State of New Jersey's Any Willing Provider Law.

## FIRST CAUSE OF ACTION:
## DECLARATORY RELIEF

120.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

121.    An actual controversy has arisen and now exists between Prime Aid and Humana as to Prime Aid's right to participate in Humana's provider Network.

122.    Prime Aid has completely and exhaustively refuted all grounds which Humana has cited as bases for its decision to reject Prime Aid's application to join Humana's Network.

123.    At all times, Prime Aid has remained ready, willing and able to satisfy Humana's terms and conditions for its Network pharmacies.

124.    New Jersey's Any Willing Provider Statute requires recognition of the right of pharmacies, like Prime Aid, who are willing to meet the terms and conditions established for participation in a health plan to participate in the network.

125.    Prime Aid has suffered, and will continue to suffer, damages, including irreparable harm, monetary damages, attorneys' fees, and costs, as a result of Humana's unlawful rejection of Prime Aid's application to join Humana's Network.

## SECOND CAUSE OF ACTION:
## INJUNCTIVE RELIEF

126.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

127.    Humana's rejection of Prime Aid's application to join Humana's Network has caused and will continue to cause irreparable harm to Prime Aid.  For every week that Prime Aid is not a member of Humana's Network, Prime Aid has lost millions of dollars in revenue.  Those revenues make up a large portion of Prime Aid's total revenue, and as an independent pharmacy, Prime Aid's viability and existence is threatened by Humana's illegal rejection of Prime Aid's application.

128.    Should Humana be permitted to continue in its illegal termination and rejection of Prime Aid from its Network and should Prime Aid be forced to close as a result of this illegal termination, no recovery of monetary damages at trial will be able to revive Prime Aid.

129.    In addition to threatening Prime Aid's viability, Humana's termination and rejection of Prime Aid from its Network threatens Humana's specialty insureds who suffer from serious and chronic medical conditions.  The public interest, in the health and safety of New Jersey residents, is best served by injunctive relief against Humana.  By enjoining Humana from rejecting Prime Aid's applications, those patients will have greater access to vital health care and have greater choice among their health care providers, as New Jersey's Any Willing Provider statute clearly intended.

130.    Injunctive relief, which would allow Prime Aid to again serve Humana's insureds, will cause no material harm to Humana.  Instead, Humana would continue reaping large profits, as it has for years.

131.    Prime Aid has at all times been and remains currently ready, willing and able to meet the terms and conditions that Humana has set forth for its Network providers.  Humana's

27

refusal to admit Prime Aid into its Network despite Prime Aid's willingness and ability to accept the terms and conditions Humana has set forth is in clear violation of New Jersey's Any Willing Provider statutes.

132.    Prime Aid requests that this Court enjoin Humana from rejecting Prime Aid's application to join Humana's Network and other relief as set forth in the prayer for relief.

## THIRD CAUSE OF ACTION:
## VIOLATION OF SECTION 2 OF THE SHERMAN ACT

133.    Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as though fully set forth herein.

134.    Humana has a high degree of market or monopoly power in the market for specialty pharmacy services to New Jersey insureds who are locked in to its Network, including the absolute power to exclude competition from that market.  It has wrongfully used its power to exclude competition from the market to increase that market power.

135.    Humana has wrongfully excluded its most significant local independent competitor, Prime Aid, from the relevant market contrary to the New Jersey Any Willing Provider laws and on pretextual grounds.

136.    Humana's wrongful conduct, including its exclusion of Prime Aid from the Network, has been undertaken with a specific intent to monopolize the market for specialty pharmacy services to New Jersey insureds who are locked into to its Network.

137.    Humana has a reasonable probability of succeeding in monopolizing the market for specialty pharmacy services to New Jersey insureds who are locked into to its Network based on, *inter alia*, its absolute control of access to the market, its elimination of competition from major independent specialty pharmacies like Prime Aid, its ability to grant collusive reciprocal rights to specialty pharmacies controlled by other PBMs while excluding all meaningful

28

independent competition on level and quality of service, and its ability to direct lucrative specialty pharmacy business in the Network to its captive or affiliated mail order and specialty pharmacies.

138.    Humana's monopolization and attempted monopolization violates Section 2 of the Sherman Act, 15 U.S.C. § 2.

139.    Humana has exercised market power to exclude Prime Aid from competing in the market in which Humana competes with Prime Aid through its captive and/or affiliated mail order and specialty pharmacies.

140.    Humana's exclusionary conduct, exercise of market power, monopolization and attempted monopolization have harmed competition and the welfare of consumers.  Prime Aid has been injured in its business and property by reason of these violations of the Sherman Act, suffering antitrust injury caused by the anticompetitive and wrongful conduct of Humana.

141.    Pursuant to the Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, Prime Aid is entitled to treble damages, injunctive relief and costs including attorneys' fees.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF SECTION 1 OF THE SHERMAN ACT**

142.    Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as though fully set forth herein.

143.    Humana has a high degree of market or monopoly power in the market for specialty pharmacy services to New Jersey insureds who are locked in to its Network, including the absolute power to exclude competition from that market.  It has wrongfully used its power to exclude competition from the market to increase that market power.

29

144.    Humana has abused the exclusivity granted under agreements with health plans wrongfully to exclude its most significant local competitor, Prime Aid, from the relevant market contrary to the New Jersey Any Willing Provider laws and on sham pretext grounds.

145.    Humana has entered into agreements that restrain trade, and its wrongful conduct employing the restraints in those agreements has harmed competition and consumer welfare and Prime Aid, all in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

146.    Humana's agreements with health plans, granting it exclusive rights to act as PBM for those health plans and employers through which it has wrongfully excluded Prime Aid from its Network and foreclosed Prime Aid's competition with its captive specialty pharmacy comprise unlawful agreements in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

147.    The agreements and Humana's wrongful conduct have entirely foreclosed Prime Aid from competing in the relevant market for specialty pharmacy services to New Jersey insureds who are locked in to its Network.

148.    Humana has exercised market power to exclude Prime Aid from competing in the market in which Humana competes with Prime Aid through its captive and/or affiliated mail order and specialty pharmacies.

149.    Humana's exclusionary conduct, exercise of market power and its exclusive agreements have harmed competition and the welfare of consumers and Prime Aid has been injured in its business and property by reason of these violations of the Sherman Act, suffering antitrust injury caused by the anticompetitive and wrongful conduct of Humana.

150.    Pursuant to the Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, Prime Aid is entitled to treble damages, injunctive relief and costs including attorneys' fees.

## FIFTH CAUSE OF ACTION:
## VIOLATION OF NEW JERSEY ANTITRUST ACT

151.    Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as though fully set forth herein.

152.    Humana has market power in the market for specialty pharmacy services to New Jersey insureds who are locked into to its Network, including the absolute power to exclude competition from that market.

153.    Humana has wrongfully excluded its most significant local competitor, Prime Aid, from the relevant market contrary to the New Jersey Any Willing Provider laws and on sham pretext grounds.  Its exclusion of Prime Aid from the Network is intended to eliminate competition from Prime Aid in order to allow Humana to monopolize the market for specialty pharmacy services to New Jersey insureds who are locked in to its Network.

154.    Humana has a reasonable probability of succeeding in monopolizing the market for specialty pharmacy services to New Jersey insureds who are locked in to its Network.

155.    Humana's monopolization and attempted monopolization violates the New Jersey Antitrust Act, 1970 N.J. Laws ch. 73, codified at N.J. STAT. ANN. §§ 56:9-1 to -19.

156.    Humana has entered into agreements that restrain trade, and its wrongful conduct employing the restraints in those agreements has harmed competition and consumer welfare and Prime Aid, all in violation of the New Jersey Antitrust Act.

157.    Humana's agreements with health plans, granting it exclusive rights to act as PBM for various health plans and through which it has wrongfully excluded Prime Aid from its Network and foreclosed Prime Aid's competition with its captive specialty pharmacy comprise unlawful agreements in restraint of trade in violation of the New Jersey Antitrust Act, 1970 N.J. Laws ch. 73, codified at N.J. STAT. ANN. §§ 56:9-1 to -19.

31

158.    Humana has exercised market power to exclude Prime Aid from competing in the market in which Humana competes with Prime Aid through its captive specialty pharmacy.

159.    Humana's exclusionary conduct, exercise of market power and its exclusive agreements have harmed competition and the welfare of consumers and Prime Aid has been injured in its business and property by reason of these violations of the New Jersey Antitrust Act, suffering antitrust injury caused by the anticompetitive and wrongful conduct of Humana.

160.    Pursuant to the New Jersey Antitrust Act, Prime Aid is entitled to treble damages, injunctive relief and costs including attorneys' fees.

161.    WHEREFORE, Plaintiff prays for judgment as follows:

(a)    a declaration that Defendant is required to admit Plaintiff into its Network in accordance with New Jersey's Any Willing Provider statutes;

(b)    an order enjoining Defendant from rejecting Plaintiff's application to join Defendant's Network;

(c)    treble damages for injury to the business and property of Prima Aid caused by Humana's violations of the Sherman Act and the New Jersey Antitrust Act;

(d)    all of the costs of this action including, but not limited to, reasonable attorneys' fees; and

(e)    any further and additional relief as this Court may deem just and proper.

32

## JURY DEMAND

162.    Plaintiff hereby demand a jury trial.


DUANE MORRIS LLP


/s/ Jonathan L. Swichar
Jonathan L. Swichar (020721997)
One Riverfront Plaza
1037 Raymond Boulevard, Suite 1800
Newark, NJ 07102-5429
Telephone:  973-424-2000
Fax:  973-424-2001
*Attorney for Plaintiff*

Dated:  April 15, 2016

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 11.2</u>

I HEREBY CERTIFY  that the matter in controversy is not the subject of any other action pending in any other court or of any pending arbitration or administrative proceeding.

DUANE MORRIS LLP


<u>*/s/ Jonathan L. Swichar*</u>
Jonathan L. Swichar (020721997)
One Riverfront Plaza
1037 Raymond Boulevard, Suite 1800
Newark, NJ 07102-5429
Telephone:  973-424-2000
Fax:  973-424-2001
*Attorney for Plaintiff*


Dated:  April 15, 2016

DM1\6732424.5