# EXHIBIT A

# Humana

April 4, 2014

SENT VIA UPS

PRIME AID PHARMACY
39-15 Bergenline Avenue
Union City, NJ 07087

RE: Termination of Pharmacy Provider Agreement, as amended (the "Agreement") by and between Humana Health Plan, Inc., Humana Insurance Company and Humana Pharmacy Solutions, Inc. ("Humana") and PRIME AID PHARMACY, NCPDP 3194418 ("Pharmacy")

Dear Pharmacy Owner:

Humana is notifying the Pharmacy of its intent to terminate the Agreement because it has reason to believe that the Pharmacy has improperly shipped prescription drugs into a jurisdiction in which it was not licensed in violation of state law. Humana's review of current dispensing records for the Pharmacy indicates that the Pharmacy has distributed prescription drugs to members residing in New Jersey, New York, Ohio, Pennsylvania, Connecticut, Deleware, Florida, Georgia, Puerto Rico, Rhode Island, and West Virginia. Based upon a search of the state's on-line database of pharmacies authorized by the state, it appears that the Pharmacy did not have the proper state authorization to ship prescription drugs into **Ohio and Florida** at the time that it shipped prescription drugs into the state.

Humana takes violations of state licensing laws very seriously. The unauthorized distribution of prescription drugs constitutes cause justifying immediate termination under Section 8.3 of the Agreement. Among other provisions, Humana may terminate the Agreement pursuant to section 8.3(iii) if the Pharmacy or any of its employed and/or contracted Pharmacists "violates the covenants set forth in Article 2.0, Provider Services and Responsibilities. . . ." In Section 2.4, the Pharmacy represented that it, its participating pharmacies and its employed and/or contracted Pharmacists "have and shall maintain in good standing for the term of this Agreement, all federal, state and local licenses, accreditation and certifications as required by law." Section 2.5 of the Agreement requires the Pharmacy to comply and to require its pharmacies and pharmacists to comply "with all federal, state, local and CMS instructions, statutes, ordinances, orders, rules and regulations that are applicable to the provision of Pharmacy Services under the terms and conditions of this Agreement." In addition, the Pharmacy agreed to "maintain current and unrestricted state and federal licenses" in Section 2.3.1 of the Agreement.

In addition to the violation of state law referenced above, Humana has an independent and separate basis for termination. Retail pharmacies in Humana's pharmacy network are <u>not</u> permitted to deliver prescription drugs or supplies through mail delivery services, such as the U.S. Postal Service, UPS, DHL, Federal Express and similar national, regional or local common carriers. Pursuant to Section 1.6(c) of the Agreement, "Mail Order Pharmacy Services are explicitly excluded from this Agreement." Retail pharmacies are only permitted to distribute prescription drugs to Humana members through customer pick-up or same day delivery. Humana has reason to believe that the pharmacy is using mail delivery services to distribute prescription drugs to its members in violation of the Agreement.

As a result of the recent findings that the Pharmacy has violated state licensing laws, the Pharmacy will be terminated effective on **June 11, 2014.** However, if the Pharmacy can demonstrate that

Humana.com

it was authorized to ship prescriptions into **Ohio and Florida** at the time that the Pharmacy distributed prescriptions into these states, the Pharmacy may send a response with supporting documentation to the address below by **April 18, 2014.** If Humana receives a response by this date, Humana will review the information and notify the Pharmacy as to its decision with respect to termination. If Humana does not receive a response by this date, Humana will proceed with termination of the Agreement, effective on **June 11, 2014**

Sincerely,

*[signature]*

**Jay Ecleberry**
Director, HPS Network Contracting

**Address for Notices:**
Humana Pharmacy Networks
003/73266
325 West Main St
Waterfront Plaza 6 West
Louisville, KY 40202

Humana.com

# EXHIBIT B

| | | |
|---|---|---|
| NEW YORK | **DuaneMorris®** | BALTIMORE |
| LONDON | | WILMINGTON |
| SINGAPORE | | MIAMI |
| PHILADELPHIA | *FIRM and AFFILIATE OFFICES* | BOCA RATON |
| CHICAGO | | PITTSBURGH |
| WASHINGTON, DC | | NEWARK |
| SAN FRANCISCO | JONATHAN L. SWICHAR | LAS VEGAS |
| SILICON VALLEY | DIRECT DIAL: +1 215 979 1816 | CHERRY HILL |
| SAN DIEGO | PERSONAL FAX: +1 215 689 4428 | LAKE TAHOE |
| BOSTON | *E-MAIL:* JLSwichar@duanemorris.com | MYANMAR |
| HOUSTON | | OMAN |
| LOS ANGELES | *www.duanemorris.com* | *A GCC REPRESENTATIVE OFFICE* |
| HANOI | | *OF DUANE MORRIS* |
| HO CHI MINH CITY | | |
| ATLANTA | | MEXICO CITY |
| | | ALLIANCE WITH |
| | | MIRANDA & ESTAVILLO |

April 17, 2014

**VIA FEDERAL EXPRESS**

Jay Ecleberry
Director, HPS Network Contracting
Humana Pharmacy Networks
003/73266
325 West Main Street
Waterfront Plaza 6 West
Louisville, KY 40202

    Re:   **Prime Aid Pharmacy Corporation, NCPDP # 3194418**

Dear Mr. Ecleberry:

    This law firm represents Prime Aid Pharmacy Corporation ("Prime Aid") located in Union City, New Jersey. On April 4, 2014, Prime Aid received a letter from Humana Pharmacy Networks ("Humana") advising Prime Aid that Humana had decided to terminate Prime Aid from participating in its network. The letter, another copy of which is attached hereto as <u>Exhibit A</u>, claims that Humana has reason to believe that Prime Aid improperly shipped prescription drugs into a jurisdiction in which it was not licensed in violation of state law.

    Initially, we must emphasize that Humana's letter fails to provide any specifics regarding its allegations as required by New Jersey law. *See* N.J. Model Contract § 4.9.3.A; N.J.A.C. § 11:24-15.2(b). For example, Humana does not identify the specific claims, dates of alleged shipments or the patients involved. It is our position that Humana's failure to provide any specific grounds purporting to support the termination of Prime Aid from the Humana Pharmacy Network violates the New Jersey Model Contract, which applies to Pharmacy Benefit Managers, such as Humana, who contract with New Jersey Health Maintenance Organizations. *See* N.J. Model Contract at §4.9.1.E. Accordingly, we request that Humana agree to rescind its April 4th notice of termination. Should it decide to continue to pursue termination of Prime Aid

DuaneMorris

Patrick Clemons
April 17, 2014
Page 2

from its network, after review of this letter, then we request that Humana reissue a notice of termination that complies with New Jersey law. Any new letter must include the specific claims, dates and patients involved.

Despite not providing any specific information concerning the basis for Humana's proposed termination, Humana alleges that Prime Aid shipped prescriptions into New York, Ohio, Pennsylvania, Connecticut, Delaware, Florida, Georgia, Puerto Rico, Rhode Island and West Virginia. However, Humana only identifies shipments of prescription drugs into Ohio and Florida as potentially improper. Therefore, we assume that Humana recognizes that Prime Aid is properly licensed as a non-resident pharmacy in New York, Connecticut, Delaware, Rhode Island and West Virginia, and that any shipments of prescription drugs into those states was lawful. *See attached* licenses at Exhibit B; Pharmacy Licenses are not required for shipments to Georgia, Pennsylvania, and Puerto Rico.

On rare occasions, and only in exigent circumstances, Prime Aid has shipped specialty medications into states to long term patients of Prime Aid who had traveled out of state and were in need of refills of their specialty medications.

We dispute that these shipments were improper in any way. Under New Jersey law, "unprofessional conduct" includes "gross negligence, gross malpractice or gross incompetence which damaged or endangered the life, health, welfare, safety or property of any person. N.J.A.C. § 45:1-21(c). Florida also has analogous law. *See*, Fla. Stat. § 381.026, "Florida Patient's Bill of Rights and Responsibilities" ("[a] patient has a right to treatment for any emergency medical condition that will deteriorate from failure to provide such treatment."); *See also*, N.J.A.C. § 3:39-7.4, and Fla. Stat. § 465.0275 (permitting a pharmacy to dispense medication on an emergency bases for continuation of a therapy for a chronic conditions or chronic maintenance drug). Ohio has no statute prohibiting out-of-state deliveries of medications in circumstances in which patients of Prime Aid are temporarily out of state and require a short-term refill to avoid a potentially catastrophic interruption in therapy.

Because Prime Aid's business is almost exclusively specialty drugs, we presume the drugs in question are specialty drugs prescribed for serious chronic illnesses. Due to the expensive costs of these drugs, they are rarely, if ever, maintained in inventory at local pharmacies. Moreover, the delivery of these drugs to patients often requires individualized oversight in the form of counseling and compliance. Patients are almost always required to make or use specialty pharmacies, of which there are far fewer in communities (some of which are rural and do not have specialty pharmacies), to fill and oversee administration of these specialty prescriptions.

All of the medications in question were dispensed to pre-existing Prime Aid patients who most likely were prescribed a therapeutic regime for a chronic illness and who traveled to another state with refills pending at Prime Aid. Due to the serious nature of these patients' illnesses, it would have been potentially catastrophic to interrupt their therapeutic regime until

DM1\4595797.1

DuaneMorris

Patrick Clemons
April 17, 2014
Page 3

their care could be transitioned to a resident specialty pharmacy or they returned home. Consequently, under Prime Aid's <u>legal</u> <u>obligation</u> not to abandon patients during a course of medical treatment, Prime Aid may have shipped prescriptions to its patients in other states. Prime Aid's acts are wholly consistent with its legal obligations under New Jersey law and similar laws in other states. We further note that the New Jersey Model Contract specifically states that a contractor, or its subcontractor, "shall not oblige providers to violate their state licensure regulations." *See* N.J. Model Contract § 4.9.1.I. Thus, even if Prime Aid shipped prescription drugs into Ohio and Florida, it is our position that it was done solely for the purpose of protecting the patient's health and safety by maintaining an existing course of treatment and, therefore, proper in all respects. As such, these isolated shipments in emergency situation should not serve as a basis for Humana's termination of Prime Aid from its network.

Additionally, Humana asserts, as an alternative basis for termination, that Prime Aid violated its contract with Humana by shipping drugs via federal express to patients and that "mail order pharmacy services are explicitly excluded from the Humana agreement." To be clear, Prime Aid is not a "mail order" pharmacy, and is not licensed as such in New Jersey, which has a separate licensure category for "mail order" pharmacies. Moreover, all of the prescriptions shipped via federal express were for a 30-day or less supply of the drugs. Traditionally, "mail order" pharmacies, including Humana's RightSource mail order option, dispense prescriptions in 90-day supply increments. Accordingly, Prime Aid is not a mail order pharmacy nor has it operated as one and this also is not a valid basis for terminating Prime Aid's contract with Humana.[1]

Finally, Humana's termination letter also fails to comply with the New Jersey Model Contract's termination provision requirements, which require the contractor, and its subcontractors, to comply with all of the New Jersey HMO regulations at N.J.A.C. 11:24 *et seq.* regarding provider termination. N.J. Model Contract § 4.9.3.A. These include providing at least 90 days prior written notice and a right to request a hearing. *See* N.J.A.C. 11:24-15.2. In addition, the notice of termination is required to contain a statement regarding the procedure by which Prime Aid can exercise its right to a hearing. *Id.* Since no such procedure was provided in Humana's notice of termination, we are hereby providing you notice the Prime Aid is requesting in writing the specific grounds for termination of its provider agreement with Humana, as well as, a hearing on the merits of those grounds, should Humana refuse to rescind its April 4th termination letter.

---

[1] In addition, as a Medicare Part D sponsor, Humana is required to comply with the provisions of 42 C.F.R. § 423 *et seq.* Section 423.505(b)(17) requires Humana "to agree to have a standard contract with reasonable and relevant terms and conditions of participation whereby any willing pharmacy may access the standard contract and participate as a network pharmacy." It is questionable whether the Centers for Medicare and Medicaid Services would consider a restriction on the use of commercial mail carriers a "reasonable" condition to a provider contract since it would seem to inhibit patients' choice of providers.

DuaneMorris

Patrick Clemons
April 17, 2014
Page 4

      We appreciate your cooperation in this matter.

                                          Sincerely,

                                          Jonathan L. Swichar

JLS:rmc
Enclosure

cc:    Prime Aid Pharmacy Corp.
       Michael M. Mustokoff, Esquire
       (both w/o enc.)

Case 2:16-cv-02104-SDW-SCM Document 1-1 Filed 04/15/16 Page 8 of 11 PageID: 45

DM1\4595797.1

DuaneMorris

# EXHIBIT A

# Humana

April 4, 2014

SENT VIA UPS

**PRIME AID PHARMACY**
39-15 Bergenline Avenue
Union City, NJ 07087

RE: Termination of Pharmacy Provider Agreement, as amended (the "Agreement") by and between Humana Health Plan, Inc., Humana Insurance Company and Humana Pharmacy Solutions, Inc. ("Humana") and PRIME AID PHARMACY, NCPDP 3194418 ("Pharmacy")

Dear Pharmacy Owner:

Humana is notifying the Pharmacy of its intent to terminate the Agreement because it has reason to believe that the Pharmacy has improperly shipped prescription drugs into a jurisdiction in which it was not licensed in violation of state law. Humana's review of current dispensing records for the Pharmacy indicates that the Pharmacy has distributed prescription drugs to members residing in New Jersey, New York, Ohio, Pennsylvania, Connecticut, Deleware, Florida, Georgia, Puerto Rico, Rhode Island, and West Virginia. Based upon a search of the state's on-line database of pharmacies authorized by the state, it appears that the Pharmacy did not have the proper state authorization to ship prescription drugs into **Ohio and Florida** at the time that it shipped prescription drugs into the state.

Humana takes violations of state licensing laws very seriously. The unauthorized distribution of prescription drugs constitutes cause justifying immediate termination under Section 8.3 of the Agreement. Among other provisions, Humana may terminate the Agreement pursuant to section 8.3(iii) if the Pharmacy or any of its employed and/or contracted Pharmacists "violates the covenants set forth in Article 2.0, Provider Services and Responsibilities, . . ." In Section 2.4, the Pharmacy represented that it, its participating pharmacies and its employed and/or contracted Pharmacists "have and shall maintain in good standing for the term of this Agreement, all federal, state and local licenses, accreditation and certifications as required by law," Section 2.5 of the Agreement requires the Pharmacy to comply and to require its pharmacies and pharmacists to comply "with all federal, state, local and CMS instructions, statutes, ordinances, orders, rules and regulations that are applicable to the provision of Pharmacy Services under the terms and conditions of this Agreement." In addition, the Pharmacy agreed to "maintain current and unrestricted state and federal licenses" in Section 2.3.1 of the Agreement.

In addition to the violation of state law referenced above, Humana has an independent and separate basis for termination. Retail pharmacies in Humana's pharmacy network are <u>not</u> permitted to deliver prescription drugs or supplies through mail delivery services, such as the U.S. Postal Service, UPS, DHL, Federal Express and similar national, regional or local common carriers. Pursuant to Section 1.6(c) of the Agreement, "Mail Order Pharmacy Services are explicitly excluded from this Agreement." Retail pharmacies are only permitted to distribute prescription drugs to Humana members through customer pick-up or same day delivery. Humana has reason to believe that the pharmacy is using mail delivery services to distribute prescription drugs to its members in violation of the Agreement.

As a result of the recent findings that the Pharmacy has violated state licensing laws, the Pharmacy will be terminated effective on **June 11, 2014.** However, if the Pharmacy can demonstrate that

Humana.com

it was authorized to ship prescriptions into **Ohio and Florida** at the time that the Pharmacy distributed prescriptions into these states, the Pharmacy may send a response with supporting documentation to the address below by **April 18, 2014.** If Humana receives a response by this date, Humana will review the information and notify the Pharmacy as to its decision with respect to termination. If Humana does not receive a response by this date, Humana will proceed with termination of the Agreement, effective on **June 11, 2014**

Sincerely,

Jay Ecleberry
Director, HPS Network Contracting

**Address for Notices:**
Humana Pharmacy Networks
003/73266
325 West Main St
Waterfront Plaza 6 West
Louisville, KY 40202

Humana.com