<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

PRIME AID PHARMACY CORP.,

                Plaintiff,

v.

HUMANA INC., et al.,

                Defendants.

Civil Action No: 16-2104 (SDW) (SCM)

**OPINION**

March 2, 2017

**WIGENTON**, District Judge.

Before this Court is Defendants Humana Inc., Humana Pharmacy Solutions, Inc., Humana Health Plan, Inc., and Humana Health Insurance Company's (collectively, "Humana" or "Defendants") Motion to Dismiss Plaintiff Prime Aid Pharmacy Corp.'s ("Prime Aid" or "Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and §1367(a). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated herein, the Motion to Dismiss is **GRANTED**. [1]

---

[1]    On October 28, 2016, Plaintiff filed a motion seeking leave to file a sur-reply in response to Humana's Reply Brief in support of its motion to dismiss. (Dkt. No. 28). This Court has discretion to deny requests to file sur-replies where the prior submissions are deemed sufficient. *See, e.g.*, *Kearney Partners Fund, LLC v. United States*, 2012 WL 8134754, at *1 n. 1 (D.N.J. July 13, 2012). Plaintiff has failed to demonstrate that a sur-reply is necessary, as the parties' arguments

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Prime Aid describes itself as the most prominent independent specialty pharmacy in New Jersey.  (Am. Compl. ¶ 40.)  Defendants are providers of healthcare products and services, and allegedly have one of the largest pharmacy benefits managers ("PBMs"), Humana Pharmacy Solutions, Inc. ("HPS"), in the United States.  (*Id*. at ¶¶ 1, 43, 48.)  PBMs manage health plans and process payments on claims submitted for prescription medications which are then dispensed by a pharmacy to a patient.  (*Id*. at ¶ 47.)  They also administer the pharmacy benefits for insurance companies, negotiate medication pricing with drug manufacturers, and decide which medications and what form of the medication are covered under the various plans that an insurance company provides.  (*Id*.)

On April 17, 2014, Humana advised Prime Aid that it was terminating Prime Aid from its provider network ("Humana Network"), alleging Prime Aid violated the terms and conditions of their Pharmacy Provider Agreement ("Agreement") by sending medications to patients in states where Prime Aid was not licensed.  (*Id*. at ¶¶ 68-9.)  Plaintiff disputes that it was in violation of the Agreement.  (*Id*. at ¶¶ 69-80.)  In April 2015, Prime Aid submitted an application to be readmitted to the Humana Network.  (*Id*. at ¶ 83.)  In May 2015, Humana denied this application, citing to its policy that pharmacies terminated for cause are not eligible to reapply for a minimum of five years.  (*Id*. at ¶¶ 25-6, 86-89.)

Plaintiff thus filed the instant action alleging Humana's actions violate the "letter and spirit" of New Jersey's Any Willing Provider statutes (AWP).  (*Id*. at ¶¶ 3, 15, 25, 88.)  New Jersey's AWP statutes state, in relevant part, that "no pharmacy or pharmacist shall be denied the

_____

were sufficiently addressed in the papers.  Plaintiff's motion for leave to file a sur-reply is therefore denied.

right to participate as a preferred provider or as a contracting provider, under the same terms and conditions currently applicable to all other preferred or contracting providers, if the contract provides for coverage by contracted or preferred providers for pharmaceutical services, provided the pharmacy or pharmacist is registered pursuant to R.S.45:14-1 et seq., and accepts the terms and conditions of the contract." *See, e.g.*, N.J.S.A. § 17:48-6j.

Plaintiff further alleges Humana's actions violate state and federal antitrust laws because Humana acted with specific intent to monopolize the relevant market, which Plaintiff defines as "specialty pharmacy services to insureds in the Humana Network in New Jersey." (*Id*. at ¶¶ 5, 26, 49, 105, 108.)  Plaintiff contends Humana has entered into agreements "with health insurers and others" that illegally and unreasonably restrain trade.  (*Id* at ¶ 104.)  Such agreements have allegedly resulted in a decrease in the level of service and quality of care in specialty pharmacy services.  (*Id* at ¶ 113.)

Humana has moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's claims should be dismissed as a matter of law because New Jersey's AWP does not provide a private right of action and Plaintiff has not pled the required elements of its antitrust claims.

## II.    LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v.*

*County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), the Court should conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim should be separated. Id. The Court must accept all of the Complaint's well-pleaded facts as true and construe the Complaint in the light most favorable to Plaintiff, but may disregard any legal conclusions. *Id*. at 210–11; *see also Phillips*, 515 F.3d at 231. Second, the Court must determine whether the facts alleged in the Complaint are sufficient to show that Plaintiff has a "plausible claim for relief." *UPMC Shadyside*, 578 F.3d at 211. In other words, a complaint must do more than allege Plaintiff's entitlement to relief; it must "show" such entitlement with its facts. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id*. There is no heightened pleading standard in antitrust cases, and the general principles governing Rule 12(b)(6) motions apply. *In re Mercedes-Benz Anti-Trust Litig.*, 157 F. Supp. 2d 355, 359 (D.N.J. 2001).

### III.   DISCUSSION

#### a.  Any Willing Provider Claims: Counts One and Two

This Court will dismiss Counts One and Two of Plaintiff's Complaint, which are brought under New Jersey's AWP statute, because the AWP statute does not expressly provide for a private

cause of action, and this Court will not imply one.  To determine if a statute confers an implied private right of action, New Jersey courts consider whether: "(1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy."  *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 272 (2001).

New Jersey courts have been reluctant to infer a statutory private right of action where the legislature has not expressly provided for one.  *Id*. at 773.  They are "particularly unlikely to find a private right of action in an area, like insurance, where a comprehensive legislative scheme provides for enforcement by regulators."  *Smith v. Conseco Life Ins. Co.*, 2014 WL 3345592, at *3 (D.N.J. July 8, 2014) (internal quotation marks omitted).

The New Jersey AWP statutes are found in Titles of the New Jersey Code encompassing a legislative scheme that regulates the insurance industry, and Plaintiff has failed to demonstrate that it would be consistent with that legislative scheme to infer a private cause of action.  Given the broad authority granted to the Department of Banking and Insurance to enforce violations of the Titles in which the New Jersey AWP statutes can be found, this Court does not find any discernable legislative intent to authorize a private cause of action.  *See* N.J.S.A. §§ 17:1-1, -15.  Counts One and Two of Plaintiff's Complaint are dismissed with prejudice.

5

**b. Antitrust Claims: Counts Three, Four, and Five**

Plaintiff brings three antitrust claims under Sections 1 and 2 of the Sherman Act and the New Jersey Antitrust Act. As pled, the antitrust claims suffer from multiple defects, which are outlined below.[2]

"As a threshold matter, in order to maintain a cause of action under the Sherman Act, plaintiffs must prove injury of the type the antitrust laws were intended to prevent." *Only v. Ascent Media Grp., LLC*, 2006 WL 2865492, at \*4 (D.N.J. Oct. 5, 2006); *see also Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 489 (1997). "[A]ntitrust laws exist to protect competition, not competitors." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 922 F. Supp. 1055, 1063 (E.D. Pa. 1996), aff'd, 124 F.3d 430 (3d Cir. 1997). Although Humana's decision to terminate Prime Aid from its Network may harm Prime Aid, the Amended Complaint contains no facts demonstrating the decision harmed competition. Plaintiff alleges that Humana's actions have led to "a diminution in the level of service and quality of care in specialty pharmacy services," yet provides no facts to support this conclusory allegation. (*See* Am. Compl. ¶ 113.)

Plaintiff also fails to plausibly allege a relevant market.[3] "The outer boundaries of a product market are determined by evaluating which products would be reasonably interchangeable by consumers for the same purpose." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d

---

[2] The New Jersey Antitrust Act mandates that it "shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate, insofar as practicable, a uniformity in the laws of those states which enact it." N.J. Stat. Ann. § 56:9-18. Because this Court has concluded that Plaintiff has insufficiently pled its federal antitrust claims, this Court will dismiss Plaintiff's state law antitrust claim.

[3] Failure to allege a plausible relevant market is grounds for dismissal. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) ("Where the plaintiff…alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.")

494, 513 (3d Cir. 1998). Despite acknowledging the existence of other PBMs that include specialty pharmacy services, the Amended Complaint defines the relevant market as "specialty pharmacy services to insureds in the Humana Network in New Jersey." (Am. Compl. ¶¶ 108, 131, 154 (discussing "specialty pharmacies controlled by other PBMs")).

Plaintiff appears to argue that the market should be narrowed to specialty pharmacy services solely within the Humana Network because Humana's insureds are "locked in" to using Humana's approved specialty pharmacies. This argument is not persuasive. Restriction to approved providers is inherent to any healthcare plan. This alone cannot provide the basis for an antitrust action, particularly given Plaintiff's failure to plausibly allege that Humana's insureds are unable to switch to plans that offer interchangeable services. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 438-9 (3d Cir. 1997) ("Were we to adopt plaintiffs' position that contractual restraints render otherwise identical products non-interchangeable for purposes of relevant market definition, any exclusive dealing arrangement, output or requirement contract, or franchise tying agreement would support a claim for violation of antitrust laws…Plaintiffs suggest…that in some circumstances, a single brand of a product or service may constitute a relevant market. This is correct where the commodity is unique, and therefore not interchangeable with other products.") Plaintiff fails to sufficiently address why its defined market is so narrow, or why Humana's services are not interchangeable with those of its competing PBMs.

Because Plaintiff has not adequately pled a relevant market, it has not adequately alleged its monopolization claims. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993) (holding that plaintiff may not be liable for attempted monopolization absent proof of dangerous probability plaintiff would monopolize a particular market); *see also United States v. Grinnell Corp.*, 384 U.S. 563, 570 (1966) (indicating that possession of monopoly power in a relevant

7

market is required for a monopolization claim). Furthermore, this Court is not persuaded that the facts as alleged – namely, that Humana terminated and refused to renew its contract with Prime Aid pursuant to the terms of their Agreement – are sufficient to plausibly establish that Humana's actions constituted anticompetitive conduct. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) ("[T]he possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct.").

As they are insufficiently pled, Plaintiff's antitrust claims are dismissed without prejudice.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. Plaintiff shall have thirty (30) days to file an Amended Complaint in accordance with this Opinion. An appropriate Order follows.

_____/s/ Susan D. Wigenton_____
SUSAN D. WIGENTON, U.S.D.J

Orig:       Clerk
cc:         Steven C. Mannion, U.S.M.J.
            Parties

8