NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRIME AID PHARMACY CORP., <br><br> Plaintiff, <br><br> v. <br><br> HUMANA INC., et al., <br><br> Defendants. | Civil Action No: 16-2104 (SDW) (SCM) <br><br> **OPINION** <br><br><br> August 9, 2017 |

**WIGENTON**, District Judge.

Before this Court is Defendants Humana Inc., Humana Pharmacy Solutions, Inc., Humana Health Plan, Inc., and Humana Health Insurance Company's (collectively, "Humana" or "Defendants") Motion to Dismiss Plaintiff Prime Aid Pharmacy Corp.'s ("Prime Aid" or "Plaintiff") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and §1367(a). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated herein, the Motion to Dismiss is **GRANTED**.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

This Court assumes the parties are familiar with the factual background and procedural history of this case. On March 2, 2017, this Court, having found that there was no private cause of action for Plaintiff's Any Willing Provider ("AWP") claims and that Plaintiff's antitrust claims

were insufficiently pled, granted Defendants' Motion to Dismiss. On April 3, 2017 Plaintiff filed a Second Amended Complaint ("SAC") seeking declaratory and injunctive relief (Counts One and Two), and alleging violations of Section 2 of the Sherman Act (Count Three) and the New Jersey Antitrust Act (Count Four). Defendants moved to dismiss the Second Amended Complaint on May 1, 2017. Plaintiff filed its opposition to Defendants' Motion on May 22, 2017, and Defendants submitted their Reply on May 30, 2017.

## II. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), the Court should conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim should be separated. Id. The Court must accept all of the Complaint's well-pleaded facts as true and construe the Complaint in the light most favorable to Plaintiff, but may disregard any legal conclusions. *Id*. at 210–11; *see also Phillips*, 515 F.3d at 231. Second, the Court must determine whether the facts alleged in the Complaint are sufficient to show that Plaintiff has a "plausible claim for relief." *UPMC Shadyside*, 578 F.3d at 211. In other words, a complaint must do more than allege Plaintiff's entitlement to relief; it must "show" such

2

entitlement with its facts. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id*. There is no heightened pleading standard in antitrust cases, and the general principles governing Rule 12(b)(6) motions apply. *In re Mercedes-Benz Anti-Trust Litig.*, 157 F. Supp. 2d 355, 359 (D.N.J. 2001).

## III. DISCUSSION

### a. Any Willing Provider Claims (Counts One and Two)

In Counts One and Two, Plaintiff reasserts its claims brought pursuant to the AWP statute, which it concedes this Court has already dismissed with prejudice. (SAC ¶¶ 278 – 290 n.1.) Contrary to Plaintiff's assertion that this Court has previously "only address[ed] the lack of an implied private cause of action," (Pl.'s Br. at 21 n.9), this Court held that "the AWP statute does not *expressly* provide for a private cause of action, and this Court will not imply one." *Prime Aid Pharmacy Corp. v. Humana Inc.*, Civ. No. 16-2104, 2017 WL 2889677, at *2 (D.N.J. Mar. 2, 2017) (emphasis added). Furthermore, given that this Court already dismissed these claims with prejudice, it was unnecessary to reassert them for purposes of appeal. *See U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 516 (3d Cir. 2007) ("We believe the proper rule allows plaintiffs to appeal dismissals despite amended pleadings that omit the dismissed claim provided

repleading the particular cause of action would have been futile."). Counts One and Two are therefore dismissed with prejudice.[1]

### b. *Antitrust Claims (Counts Three and Four)*

As a threshold matter, Plaintiff must plead a proper relevant market in order to sustain its antitrust claims. *See United States v. Grinnell Corp.,* 384 U.S. 563, 570 (1966); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997). Previously, this Court found that Plaintiff had failed to plausibly allege a relevant market because it was impermissibly narrow. *See Prime Aid*, 2017 WL 2889677, at *3. Here, Plaintiff again defines the relevant market as "the market for specialty pharmacy services to New Jersey insureds who are locked in to the Humana Network." (SAC ¶ 134.) Plaintiff argues its market is viable under *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354 (3d Cir. 2016), where the Third Circuit instructed that in certain limited circumstances, a competitive primary market will not insulate a defendant from antitrust liability in a related aftermarket. *Id*. at 402. Plaintiff claims to have established one such circumstance here by showing the exploitation of "locked-in" Humana patients who require specialty pharmacy services, a purported aftermarket to the primary market for health insurance plans. (Pl.'s Br. at 24.)

Fatal to Plaintiff's argument, however, is the fact that specialty pharmacy services are not an aftermarket to the market for health insurance plans. Rather, the two are contracted for together when a patient chooses a particular plan. Plaintiff does not allege that terms relating to specialty pharmacy services are set separately from when the insured enters into a contract with Humana. Even if specialty pharmacy services could be considered an aftermarket, *Avaya* makes clear that

---

[1] Defendants move to strike all allegations related to Defendants' purported violations of the AWP statute pursuant to Federal Rule of Civil Procedure 12(f). Because this Court dismisses the SAC in its entirety, Defendants' Motion to Strike is dismissed as moot.

4

no antitrust liability will lie where customers are put on clear notice of the restrictions surrounding the product they are purchasing.[2] *See* 838 F.3d at 405 ("[Defendant] cannot be liable under the antitrust laws for enforcing a transparent contract freely agreed to in a competitive market."); *see also Queen City Pizza*, 124 F.3d at 443 ("[W]here the defendant's power to force plaintiffs to purchase the alleged tying product stems not from the market, but from plaintiffs' contractual agreement to purchase the tying product, no claim will lie.") (internal quotation marks omitted).

Furthermore, Humana insureds are not "locked-in" to their healthcare plans, which they are able to change annually during enrollment windows. (*See* SAC ¶¶ 9, 147.) As this Court previously noted, "[r]estriction to approved providers is inherent to any healthcare plan." *Prime Aid*, 2017 WL 2889677, at *4. Continuity of care, therefore, is often a consideration for many patients who seek to change their healthcare plans. This does not, however, render patients "locked-in" for antitrust purposes, nor does it provide a basis for a single-brand market such as the one alleged here.[3] *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 514 (3d Cir. 1998) ("Product market definition turns on the existence of close substitutes for a particular product, not on the ability of any particular consumer to switch effortlessly to such substitutes.").

---

[2] Plaintiff avers that Humana patients or their employers were "simply not focused" on these restrictions when selecting their healthcare plan. (*See* SAC ¶ 5.) But this has no bearing on whether Plaintiff has plausibly alleged an antitrust claim. Defendants' antitrust liability does not turn on what insureds focused on when choosing their healthcare plan. *See Avaya*, 838 F.3d at 406 ("TLI may wish that the PBX customers had demanded access to ISPs when negotiating with Avaya, but that is not a complaint cognizable under the antitrust laws.")

[3] Plaintiff's reliance on *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992) to support its single-brand market is misplaced. "*Kodak*…indicates that in some circumstances, a single brand of a product or service may constitute a relevant market. This is correct where the commodity is unique, and therefore not interchangeable with other products." *See Queen City Pizza*, 124 F.3d at 439. Here, however, Plaintiff acknowledges the existence of other specialty pharmacies, including some who have a physical presence in New Jersey. (*See* SAC ¶ 63.)

Because this Court again concludes Plaintiff's alleged market is too narrow, its antitrust claims cannot stand as a matter of law.[4] *See Queen City Pizza*, 124 F.3d at 436 (finding legally insufficient relevant market valid grounds for dismissal). Counts Three and Four are therefore dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. An appropriate Order follows.

                                                /s/ Susan D. Wigenton
                                                SUSAN D. WIGENTON, U.S.D.J

Orig:        Clerk
cc:          Steven C. Mannion, U.S.M.J.
              Parties

---

[4] As this Court noted previously, the New Jersey Antitrust Act mandates that it "shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate, insofar as practicable, a uniformity in the laws of those states which enact it." N.J. Stat. Ann. § 56:9-18. Because this Court concludes Plaintiff has insufficiently pled its federal antitrust claim, Plaintiff's state law antitrust claim is also dismissed.